# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

| | |
|---|---|
| MICHAEL WILLIAMS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CAUSE NO. 3:11-CV-47 |
| | ) |
| FRANK CANARECCI, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

This matter is before the court *sua sponte* pursuant to 28 U.S.C. section 1915A. For the reasons set forth below, the Court **GRANTS** the Plaintiff leave to proceed against Defendant N. Huffvine in his individual capacity for damages on the claim that he used excessive and unnecessary force on the Plaintiff, allows him to proceed against Warden Julie Lawson in her individual capacity for damages on the claim that she was deliberately indifferent to the Plaintiff's serious medical needs, and **DISMISSES**, pursuant to section 1915A, all other claims and Defendants.

BACKGROUND

Michael Williams ("Williams") is a state prisoner currently confined at the Westville Correctional Facility. His complaint deals with events that occurred while he was confined at the St. Joseph County Jail in October 2010. The Defendants are Sheriff Frank Canarecci, Jail Warden Lawson, Custody Captain N. Huffvine, Custody Sergeant Gardner, and several John or Jane Doe defendants.

Williams alleges that the Defendants violated rights protected by the United States Constitution's Fourth, Eighth, Tenth, and Fourteenth Amendments by using excessive and unnecessary force on him and denying him medical attention.

DISCUSSION

Pursuant to 28 U.S.C. section 1915A(a), district courts must review the merits of any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. Fed. R. Civ. P. 12(b)(6) provides for the dismissal of a complaint, or any portion of a complaint, for failure to state a claim upon which relief can be granted. Courts apply the same standard under section 1915A as when addressing a motion under Rule 12(b)(6). *Lagerstrom v. Kingston*, 463 F.3d 621, 624 (7th Cir. 2006).

The pleading standards in the context of a motion to dismiss for failure to state a claim are that the "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). A court should assume the veracity of a complaint's allegations, and then determine whether

2

they plausibly give rise to an entitlement to relief. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50; 173 L. Ed. 2d 868, 884 (2009).

In the context of *pro se* litigation, the Supreme Court stated that "[s]pecific facts are not necessary" to meet the requirements of Rule 8(a). The Court further noted that a "document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 127 S.Ct. 2197, 2200 (2007).

The Plaintiff refers to his complaint as a "verified Bivens" action, and also references 42 U.S.C. section 1983 (DE 1 at 1). A claim that federal officials violated a plaintiff's Constitutional rights is brought by means of a *Bivens* action. *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971). Claims that state or municipal officials violated a plaintiff's rights must be brought pursuant to 42 U.S.C. section 1983, which provides a cause of action to redress the violation of federally secured rights by a person acting under color of state law. *Burrell v. City of Mattoon*, 378 F.3d 642 (7th Cir. 2004). Because the Defendants are municipal officials acting under color of state law, the Plaintiff's claims arise under section 1983.

To state a valid cause of action under section 1983, a plaintiff must allege violation of rights secured by the Constitution or laws of the United States, and must show that a person

3

acting under color of state law committed the alleged deprivation. *West v. Atkins*, 487 U.S. 42 (1988). The first inquiry in every section 1983 case is whether the plaintiff has been deprived of a right secured by the Constitution or laws of the United States. *Baker v. McCollan*, 443 U.S. 137, 140 (1979).

Williams asserts that St. Joseph County Jail officials used excessive and unnecessary force against him and denied him medical attention. He alleges that the Defendants' actions violated the Fourth, Eighth, Tenth, and Fourteenth Amendments to the United States Constitution.

"In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Conner*, 490 U.S. 386, 394, (1989). The Tenth Amendment deals with "powers not delegated to the United States, by the constitution," and has no application to the circumstances of this case. The Plaintiff may have intended to cite the Ninth Amendment, which provides that the enumeration of certain rights in the Constitution "shall not be construed to deny or disparage others retained by the people." But the Ninth Amendment deals only with rights not specifically enumerated in other amendments, and the right of citizens to be free from excessive use of force by state officials is specifically enumerated in the Fourth, Eighth, and Fourteenth Amendments.

4

"*All* claims that law enforcement officers have used excessive force — deadly or not — in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness standard.'" *Id.* (emphasis in original). The Fourteenth Amendment's due process clause protects pretrial detainees from excessive use of force, and the Eighth Amendment's cruel and unusual punishments clause protects those convicted of crimes from excessive use of force. *Bell v. Wolfish*, 441 U.S. 520, 535 n. 16 (1979).

Williams does not state whether he was at the St. Joseph County Jail as a pretrial detainee or serving time on a conviction when he alleges that jail officials used excessive force on him. But that will not effect the screening of his claims because "[a]lthough the Eighth Amendment only applies to convicted prisoners, this court has previously stated that the same standard applies to pretrial detainees under the Fourteenth Amendment's due process clause." *Williams v. Rodriguez*, 509 F.3d 392, 401 (7th Cir. 2007), citing *Cavalieri v. Shepard*, 321 F.3d 616, 620 (7th Cir.2003) ("The Eighth Amendment does not apply to pretrial detainees, but as a pretrial detainee, [a prisoner] was entitled to at least the same protection against deliberate indifference to his basic needs as is available to convicted prisoners under the Eighth Amendment"). Accordingly, the Court will analyze the Plaintiff's claims under Eighth Amendment standards.

Excessive Use of Force Claim

A violation of the Eighth Amendment's cruel and unusual punishments clause consists of two elements: (1) objectively, whether the injury is sufficiently serious to deprive the prisoner of the minimal civilized measure of life's necessities, and (2) subjectively, whether the prison official's actual state of mind was one of "deliberate indifference" to the deprivation. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

Williams alleges that Defendant Huffvine, without provocation:

> aggressively slammed Plaintiff into a metal rack and cart with metal lining while grabbing Plaintiff around the neck chocking Plaintiff causing Plaintiff['s] neck to snap back in a whip blast motion and further slammed Plaintiff's right wrist into a metal rack and Plaintiff's lower back. Defendant N. Huffvine['s] actions caused Plaintiff extreme pain, [a] tingly sensation and semi-numbness in Plaintiff's neck, right wrist and lower back.

DE 1 at 2, ¶ 3.

A custody officer's use of physical force against an inmate may give rise to an Eighth Amendment claim. *Hudson v. McMillian*, 503 U.S. 1 (1992); *Whitley v. Albers*, 475 U.S. 312 (1986). In evaluating whether an officer used excessive force, the court is to consider factors such as the need for the application of force, the relationship between the need and the amount of force used, and the extent of injury inflicted. *Whitley v. Albers*, 475 U.S. at 321-22.

> Whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley*: whether force was applied in a good-faith

6

> effort to maintain or restore discipline, or maliciously and sadistically to cause harm.

*Hudson*, 503 U.S. at 6-7.

"Fed. R. Civ. P. 8 establishes a system of notice pleading," and a claim may not be dismissed at the pleadings stage "unless no relief could be granted 'under any set of facts that could be proved consistent with the allegations.'" *Nance v. Vieregge*, 147 F.3d 589, 590 (7th Cir. 1998), quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). Giving the Plaintiff the benefit of the inferences to which he is entitled at the pleadings stage, he has stated a plausible excessive use of force claim against Captain Huffvine under the standards set forth in *Hudson v. McMillian* and *Whitley v. Albers*.

<u>Denial of Medical Treatment Claim</u>

In paragraphs five and six of his complaint, Williams alleges that Defendants Lawson and Gardner denied him timely medical treatment for the injuries inflicted on him by Defendant Huffvine. The Eighth Amendment requires the government "to provide medical care for those whom it is punishing by incarceration." *Snipes v. DeTella*, 95 F.3d 586, 590 (7th Cir.1996) (*cert. denied,* 519 U.S. 1126 (1997) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). In medical cases, the Eighth Amendment test is expressed in terms of whether the defendant was deliberately indifferent to the plaintiff's serious medical needs. *Williams v. Liefer*, 491 F.3d 710, 714 (7th Cir. 2007); *Gutierrez v. Peters*, 111 F.3d 1364, 1369

7

(7th Cir. 1997). A medical need is "serious" for Eighth Amendment purposes if it is either one that a physician has diagnosed as mandating treatment, or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention, and if untreated could result in further significant injury or unnecessary pain, and that significantly affects the person's daily activities or features chronic and substantial pain. *Gutierrez,* 111 F.3d at 1373.

In Paragraph five, Williams states that Warden Lawson "refused to call for medical staff after Plaintiff informed he[r] of his injuries as a result of the battery that was committed by defendant N. Huffvine and Cpl. John Doe" (DE 1 at 2, ¶ 5). Williams plausibly alleges that he had a serious medical need, that he informed Defendant Lawson of that need, and that she refused to allow him to be seen by medical personnel. Giving the Plaintiff the benefit of the inferences to which he is entitled at the pleadings stage, the court cannot say that he can prove no set of set of facts consistent with his claim that Defendant Lawson was deliberately indifferent to his serious medical needs. In Paragraph six, Williams asserts that:

> he informed defendant Sgt. Gardner of the battery . . . and he immediately got on his radio and called medical staff for Plaintiff's neck, back and right wrist injuries, which medical staff refused to come and provide medical attention . . . Sgt. Gardner failed to provide Plaintiff with a "Duty of Care" and violated Plaintiff's civil rights when he failed to call his superior[s] and inform them of the situation.

8

DE 1 at 2 ¶ 6.

When Williams asked Sgt. Gardner for medical treatment, he responded by contacting medical staff who, according to the complaint, refused to see Williams. These facts state no deliberate indifference claim against Sgt. Gardner because he attempted to obtain help for Williams; it was the medical staff who declined to come. Jail officials are entitled to rely on the judgment of medical professionals. *See Greeno v. Daley*, 414 F.3d 645, 656 (7th Cir. 2005). The Plaintiff suggests that Sgt. Gardner should have informed his superiors "of the situation" (DE 1 at 2 ¶ 6). But his superiors, Warden Lawson and Captain Huffvine, were already aware of the situation.

Claims against Sheriff Canarecci

In Paragraph eight of his complaint, Williams seeks to bring individual and official capacity damage claims against St. Joseph County Sheriff Frank Canarecci. In his individual capacity damage claim, Williams alleges that Sheriff Canarecci is liable "through respondate (sic) superior directly and indirectly for the" actions of his subordinates (DE 1 at 3 ¶ 8).

Section 1983 creates a cause of action for damages based on personal liability; a plaintiff must show the defendant's personal involvement, participation, or direct responsibility for the conditions of which he complains. *Rascon v. Hardiman*, 803 F.2d 269, 273 (7th Cir. 1986). The doctrine of *respondeat superior*, under

which a supervisor may be held liable for an employee's actions, has no application to section 1983 actions. *Gayton v. McCoy*, 593 F.3d 610, 622 (7th Cir. 2010). Supervisory liability will be found only if the supervisor, with knowledge of the subordinate's conduct, approves of the conduct and the basis for it. That is, to be liable for the conduct of subordinates, a supervisor must be personally involved in that conduct. *Whitford v. Boglino*, 63 F.3d 527, 530-31 (7th Cir. 1995).

> [S]upervisors who are merely negligent in failing to detect and prevent subordinates' misconduct are not liable . . . The supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. They must in other words act either knowingly or with deliberate, reckless indifference.

*Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001) (quoting *Jones v. City of Chicago,* 856 F.2d 985, 992-93 (7th Cir 1998).

The complaint does not allege that Sheriff Canarecci had any personal knowledge of or involvement in the alleged excessive use of force against Williams by his subordinates or their denial of medical treatment to him. Williams seeks to hold Sheriff Canarecci responsible for his subordinates' actions using the doctrine of *respondeat superior*. But because that doctrine does not apply to section 1983 actions, he states no individual capacity claim against Sheriff Canarecci.

In his official capacity damage claim, Williams alleges that Sheriff Canarecci's "training, customs, and policies" have allowed

his subordinates to disregard the Constitution. (DE 1 at 3 ¶ 8). An official capacity damage claim against a municipal official "is not a suit against the official as an individual; the real party in interest is the entity." *Wilson v. Civil Town of Clayton, Indiana*, 839 F.2d 375, 382 (7th Cir. 1988). Municipalities cannot be held liable for damages under section 1983 unless a governmental policy or custom caused the alleged violation of the plaintiff's rights. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978).

> A "custom" or "policy" can take one of three forms: (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice, that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a "custom or usage" with force of law; or (3) an allegation that the constitutional injury was caused by a person with final policy-making authority.

*Brokaw v. Mercer County*, 235 F.3d 1000, 1113 (7th Cir. 2000). "Ordinarily, one incident is not sufficient to establish a custom that can give rise to *Monell* liability." *Williams v. Heavener*, 217 F.3d 529, 532 (7th Cir. 2000), citing *Calusinski v. Kruger,* 24 F.3d 931, 936 (7th Cir.1994).

Nothing in the complaint suggests that Defendants Huffvine and Lawson's actions were the result of a policy or practice established or sanctioned by Sheriff Canarecci. Accordingly, Williams has not stated an official capacity damage claim against the Sheriff based on policy or practice.

Williams also asserts that Sheriff Canarecci failed to properly train his subordinates. This is another species of official capacity claim. *Brown v. Budz*, 398 F.3d 904, 906 (7th Cir.

11

2005) (failure to train claim "could only be asserted against employees in their official capacities").

> An allegation of a "failure to train" is available only in limited circumstances. To prevail, Cornfield must show that District 230's "failure to train its employees in a relevant respect evidences a 'deliberate indifference' " to the rights of students. *City of Canton v. Harris*, 489 U.S. 378, 389, 109 S.Ct. 1197, 1205, 103 L.Ed.2d 412 (1989). Deliberate indifference itself is an elusive standard. The Supreme Court reasoned that policymakers would be deliberately indifferent when "in light of the duties assigned to the specific ... employees[,] the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights." *Id.* In order to ensure that isolated instances of misconduct are not attributable to a generally adequate policy or training program, we require a high degree of culpability on the part of the policymaker. Coupled with a causation requirement, this standard ensures that the violation alleged is not too far removed from the policy or training challenged as inadequate. Taken together, these two considerations amount to a requirement that liability be based on a finding that the policymakers have actual or constructive notice that a particular omission that is likely to result in constitutional violations. Otherwise, we would risk creating de facto respondeat superior liability, which is contrary to *Monell*. *See Monell*, 436 U.S. at 693-94, 98 S.Ct. at 2037-38.

*Cornfield by Lewis v. Consolidated High School Dist. No. 230*, 991 F.2d 1316, 1327 (7th Cir. 1993).

Allegations of inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989).

> [T]his court [has] listed three showings required to support a claim that a municipality's failure to train

> amounted to "deliberate indifference" of the rights of citizens: (1) that "a policy maker ... know[ ] 'to a moral certainty' that ... employees will confront a given situation"; (2) that "the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation"; and (3) that "the wrong choice by the ... employee will frequently cause the deprivation of a citizen's constitutional rights."

*Kitzman-Kelley, on behalf of Kitzman-Kelley v. Warner,* 203 F.3d 454, 459 (7th Cir. 2000), quoting *Young v. County of Fulton*, 160 F.3d 899, 903-4 (2nd Cir. 1988).

The courts have established high standards for a "failure to train" theory, and "[i]solated instances of misconduct are not attributable to a generally adequate policy or training program, we require a high degree of culpability on the part of the policymaker." *Cornfield,* 991 F.2d at 1327. The need for training must be obvious, and the supervisors must have known of an ongoing problem and been deliberately indifferent to it [*Id.*].

The allegation that Sheriff Canarecci failed to train Captain Huffvine and Warden Lawson does not meet the high standard for allowing a failure to train claim to proceed. Neither situation presents jail officials with a difficult choice of the sort that training or supervision will make less difficult. The facts alleged by the Plaintiff simply do not support a failure to train claim against Sheriff Canarecci.

<u>John and Jane Doe Defendants</u>

In Paragraph four of his complaint, Williams alleges that

13

Corporal John Doe was also involved in Captain Huffvine's excessive use of force; in paragraph two he seeks to sue a Jane Doe officer who he alleges called for assistance, falsely asserting that Williams had threatened her; and in paragraph seven, he seeks to sue "Jane and John Doe (medical staff)" for not treating him after Sgt. Gardner called them (DE 1 at 3, ¶ 7). But Williams may not pursue claims against these jail officials until he has identified them by name.

The United States Marshal's office is charged with effecting service of process for inmates confined in state penal institutions. "When the district court instructs the Marshal to serve papers on behalf of a prisoner, the prisoner need furnish no more than the information necessary to identify the defendant." *Sellers v. United States*, 902 F.2d 598, 602 (7th Cir. 1990). "The Marshals Service needs from the prisoner information sufficient to identify the guard ('John Doe No. 23' won't do)." *Id.* at 602. Because Williams has not provided the information necessary to identify the Doe defendants in this case, the Marshal can not serve them with process, and the Court cannot acquire personal jurisdiction over them.

> [I]t is pointless to include lists of anonymous defendants in federal court; this type of placeholder does not open the door to relation back under Fed. R. Civ. P. 15, nor can it otherwise help the plaintiff.

*Wudtke v. Davel*, 128 F.3d 1057, 1060 (7th Cir. 1997) (citations omitted).

14

Accordingly, the Court will dismiss the Doe defendants. If Williams is later able to identify these jail officials through discovery, he may seek to amend his complaint to add them as defendants.

CONCLUSION

For the foregoing reasons, the Court:

(1) **GRANTS** the Plaintiff leave to proceed against Defendant Captain N. Huffvine in his individual capacity for damages on the claim that he used excessive and unnecessary force on the Plaintiff, and allows him to proceed against Warden Julie Lawson in her individual capacity for damages on the claim that she was deliberately indifferent to the Plaintiff's serious medical needs;

(2) **DISMISSES**, pursuant to 28 U.S.C. section 1915A, all other claims and **DISMISSES** Sheriff Frank Canarecci, Sergeant Gardner, Officer John Doe, Officer Jane Doe, and the Jane and John Doe medical staff;

(3) Pursuant to 42 U.S.C. section 1997e(g)(2), **ORDERS** that Defendants Huffvine and Lawson respond to the complaint as provided for in the Federal Rules of Civil Procedure; and

(4) **DIRECTS** the Marshals Service to effect service of process on Defendants Huffvine and Lawson on the Plaintiff's behalf, and **DIRECTS** the Clerk's Office to ensure that a copy of this order is served on them along with the summons and complaint.

**DATED: June 17, 2011**          /S/RUDY LOZANO, Judge
                                  **United States District Court**